**In re Robert and Ginger FOLLETT.**

**Robert FOLLETT a/k/a Robert Jeremy Hawk, Plaintiff,**

**v.**

**Robert FOLLETT and Ginger Follett, Defendants.**

**Bankruptcy No. 91–10079 S. Adv. No. 92–1012.**

United States Bankruptcy Court, E.D. Arkansas, Batesville Division.

June 3, 1993.

Jeffrey Hance, Batesville, AR, for plaintiff.

Loyd Harper, Ash Flat, AR, for defendant/debtors.

Daniel Schieffler, West Helena, AR, trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Judge.

THIS CAUSE came before the Court upon the complaint to determine dischargeability, filed on October 21, 1992. The plaintiff, Robert Jeremy Hawk, the son of the debtor Robert Follett, alleges that the debtors defrauded him by misappropriating insurance proceeds he received in settlement of a damage claim. See 11 U.S.C. § 523(a)(2)(A), (a)(4). In addition to objecting to the dischargeability of the debt, the plaintiff requests that this Court reduce the debt to judgment.

■ The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. The objection to dischargeability is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(I) such that the Bankruptcy Court may enter judgment on the dischargeability claim. However, the request to reduce the debt to judgment is a noncore proceeding, judgment for which must be entered by the district court. 28 U.S.C. § 157(c).

The plaintiff in this case is Robert Jeremy Hawk, a resident of the State of New Hampshire, and the son of the debtor Robert Bruce Follett. Plaintiff was previously known as Robert Stephen Follett. Plaintiff, now twenty-four years of age, was seriously injured at the age of ten when he was struck by a car. As a result of the injuries sustained in the accident, the plaintiff suffers certain cognitive disabilities which impair his judgment, his ability to learn and ability to reason. Subsequent to the accident, he resided with his father, Robert Follett.

As a result of the automobile accident, a structured settlement was entered into by the parents of the plaintiff, through an attorney, Mr. Joel Labell, of Lawrence, Massachusetts. As a final payment on the structured settlement, Aetna Life and Casualty issued a check dated May 1, 1987, in the sum of $39,585, payable to "Robert Follett, Jr." On May 11, 1987, Robert Follett and his fiancee, Ginger, took plaintiff, now eighteen years old, to the attorney's office at which time Mr. Labell delivered the check to the plaintiff.

From the attorney's office, the debtors drove plaintiff to the bank where plaintiff was directed by his father to endorse the check to the father. Later, when plaintiff quizzed the debtors about the monies, he was advised that the debtors were going to "borrow" it to buy property or "invest" it for plaintiff by buying certain property. On June 9, 1987, the debtors purchased land in Milan, New Hampshire for $28,000. No purchase money mortgage was recorded in connection with that transaction; they paid cash. Debtors claim that they saved the money to purchase the house.

In January 1988, the debtor attended a meeting at his son's school regarding his son's special education needs. When directly questioned regarding an insurance settlement, he stated that he had "invested" the money in land in Milan. The property in Milan was later sold for $55,000. April 1989, the defendants left the state of New Hampshire, moving to Arkansas, leaving plaintiff in New Hampshire.

■ The elements of fraud in a dischargeability issue are as follows:

(1) the debtors made the representations;

(2) that at the time the debtors made the representations, they knew them to be false;

(3) that the debtors made the representations with the intention and purpose of deceiving the creditor;

(4) that the plaintiff relied on such representations;

(5) that the plaintiff sustained the alleged loss and damage as the proximate result of the representations having been made. *See Thul v. Ophaug,* 827 F.2d 340, 342 & n. 1 (8th Cir.1987).

■ Generally, fraudulent intent is the most difficult element for the plaintiff to prove because it must be established by circumstantial evidence. When the creditor introduces circumstantial evidence proving the debtor's intent to deceive, the debtor cannot overcome that inference with an unsupported assertion of honest intent. In this instance, the Court is presented with a situation in which the plaintiff is of a lower learning capacity. Proof of fraud in this case was further complicated by the fact that the plaintiff suffers from certain cognitive impairments as a result of the motor vehicle accident.

■ Despite the difficulties of proof inherent in such a fact situation, the evidence was clear that the debtors committed fraud. The defendants induced or otherwise compelled the plaintiff to pay over his insurance proceeds to them. The debtors represented to plaintiff that they were borrowing or investing funds for his benefit, but in fact they had no intent to repay the plaintiff. Robert and Ginger Follett took the money of the plaintiff, an impaired young man, for their own benefit. They left him penniless, and dependent upon only a small Social Security check.

Not only did the debtors misrepresent with an intent to defraud, the debtors were acting in a fiduciary role. Robert Follett is the natural father of the plaintiff; Ginger Follett is the step-mother of the plaintiff. Plaintiff, an impaired individual requiring extensive supervision and assistance in life skills as well as money management, lived with the debtors at the time he received the insurance settlement. No more protective role can be found in fact or under the law than that of a parent to a child, particularly a child who suffers cognitive impairment. In this instance, the father and his wife took the only material asset which the plaintiff had. A trust relationship existed when the proceeds were taken and continued throughout the course of events described in the complaint. *See generally Consolidated Oil & Gas, Inc. v. Ryan,* 250 F.Supp. 600 (W.D.Ark.1966), *aff'd,* 368 F.2d 177 (8th Cir.1966).

While the debtors deny they had anything to do with the check, their testimony is not credible. The Court finds the debtors to be untruthful. For example, Robert Follett's denial that he endorsed the check or the receipt for the monies is belied by a comparison with signatures he admits are his. Robert Follett flatly denied even taking his son to the bank. This statement was contradicted by the one truthful statement uttered during the proceedings: Ginger Follett excitedly indicated that they had taken plaintiff to the bank. At that point, the Court observed Mr. Follett signal to his wife to change her testimony, whereupon she quickly recanted her previous sentence. This behavior, as well as their demeanor and the content and inconsistencies in their testimony, evidences the debtors' indifference to the oath administered in the proceedings.

Further evidence of the debtors' untruthfulness is Ginger Follett's testimony regarding tax fraud. Ms. Follett claimed to have saved over $10,000 in the course of a year, all of which was paid to her "under the table." This money was purportedly saved in order to purchase the property in Milan, New Hampshire. These admittedly unreported funds were purportedly the source of the funds for purchase of the property, not the son's insurance proceeds. While the Court does not believe the debtors saved $28,000 for the Milan, New Hampshire property, the Court can believe the debtors committed tax fraud.

It is overwhelmingly clear to the Court that the debtors appropriated the plaintiff's money, misrepresenting to him that they were merely "borrowing" or "investing" the funds for him. These statements were false when they were made, and the debtors knew they were false. They intended to appropriate the insurance proceeds for their own benefit to the detriment of a virtual child, their own child. As a result, the plaintiff was damaged in the sum of $39,585. Accordingly,

**ORDERED** that judgment will be entered determining that the debt owed by the debtors to plaintiff is nondischargeable. It is

**FURTHER ORDERED** that the clerk shall prepare a transcript of the trial in this matter and deliver it to the Office of the United States Attorney for investigation of the tax matters with regard to which Mrs. Follett testified.

**IT IS SO ORDERED**.